## DAVID MARTIN v. JACOB M. FRANTZ.

127        389
f 33 SC ¹616

127        389
36 SC  515

ERROR TO THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.

Argued May 22, 1889—Decided June 28, 1889.
[To be reported.]

1. An agreement—without other consideration—to accept a smaller sum in satisfaction of a larger one, presently due, cannot be enforced, and the actual acceptance of such smaller sum is not a good discharge of the debt, even as accord and satisfaction.

2. The fact that, after agreeing with one of two sureties, in consideration of the receipt of one half of the debt, to release him from further liability, the creditor allows the statute of limitations to bar an action on the obligation against the other surety, discloses no consideration by way of detriment to the promisee, supporting the promise to release.

3. A right of action for contribution between co-sureties does not arise until one of them has paid more than a due proportion of the debt, and until then the statute of limitations does not begin to run between them; wherefore, such right is unaffected by the fact that the statute may have barred any direct liability of the other surety to the creditor.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 377 January Term 1889, Sup. Ct.; court below, No. 17 February Term 1888, C. P.

On January 17, 1888, Jacob M. Frantz brought assumpsit against John U. Charles, David Martin and B. U. Charles, to recover a balance of $700, with interest, remaining unpaid upon a promissory note for $1,400, dated April 1, 1879, drawn by the defendants and payable one year after date to the order of John B. Eshbach, and indorsed by Eshbach to the plaintiff.

Charge of Court below.

The defendants pleaded, non-assumpsit, payment, and the statute of limitations.

At the trial on February 5, 1889, the following facts were made to appear:

The note in suit was given to Eshbach for $1,400 borrowed from him by John U. Charles, who was the principal debtor, the other defendants being sureties. Interest on the loan was paid annually to Eshbach by John U. Charles until 1884, when he became insolvent and made no further payments. On April 1, 1886, David Martin, through his son, John M. Martin, paid to Eshbach the interest for one year, from April 1, 1884, to April 1, 1885, and $700, the one half of the principal. Eshbach indorsed and delivered the note to Jacob M. Frantz, the plaintiff, on January 1, 1888.

David Martin, one of the defendants, testified in support of a personal defence, that in a conversation which he had with Eshbach in March, 1886, the latter agreed that upon receiving payment from Martin of one half the balance of the debt, he would release Martin from all liability, and that the money to pay Eshbach was subsequently sent to him through witness's son. John M. Martin, the son, testified that acting for his father he made the payment of April 1, 1886, above mentioned, and stated the circumstances surrounding the payment as follows:

" When I met Eshbach in the hall of the Cooper House, and I said: 'Mr. Eshbach, father sent me to pay his share of the note,' he went back in the room and filled out the check, and I said, 'If I pay you this, it will relieve us of this note altogether,' and he said, 'Yes, that is an understanding between me and your father.' I filled out the check and handed it to him, and then I demanded a receipt to that effect. He said he would write it on the back of the note, that he would look to the Charleses if they are worth the money. He said, 'this shows plainly that you have paid your part.' That is about all that transpired."

Eshbach called for the plaintiff, denied making any agreement to release David Martin from liability.

At the conclusion of the testimony, the court, LIVINGSTON, P. J., charged the jury as follows:

This is an action brought to recover the balance due on a note held by the plaintiff against the defendants. The note has been presented; it was made by the defendants and payable to John Eshbach. It has been in part paid, the last payment, $770, being made by Martin. There is still a balance due.

One of the defendants, B. U. Charles, has paid nothing at any time. He has entered the plea of the statute of limitations, that is, that he made no promise to pay within six years. Plaintiff has furnished no proof that he has so promised, and therefore no verdict can be rendered against him; he is free.

John U. Charles paid the interest on the note up to 1885, and David Martin, long after the note became due, and just before the statute of limitations would have become a bar, on April 1, 1886, paid on it 770 [including interest]. These payments prevented the statute from becoming a bar as to them, and therefore, they cannot invoke its benefits; and unless there be found something else to relieve them, they still remain liable.

[It is claimed here by defendants that there is an accord and satisfaction in this case. In our judgment, accord and satisfaction do not arise here; are not presented by the evidence in the case.] [4] Accord and satisfaction arise, and are presented, where there enters a consideration which is something new, or different from that to which the creditor was already entitled. The law will not pause to inquire or examine in such case whether the right he acquires is more or less valuable than that which he relinquishes.

.     *     *     *     *     *     *     *     *

Under our old system of pleading, accord and satisfaction would have had to be specially pleaded, and in such case it would have been necessary to set out the particulars fully, and allege that the matter set out in the special plea was accepted in full satisfaction of the debt or claim. Since special pleading in assumpsit has been abolished, I presume such matter may be presented by an affidavit of defence, or the rules as to special matter. I do not know what method was taken here.

*     *     *     *     *     *     *     *

[What was David Martin's position? He never was released by the operation of the statute of limitations. He made a

payment just before it would have become operative, that kept it alive as to him for six years longer. It required no new promise to bind him. At the time he paid the half, he was bound for the whole. Is there any other relief for him? He might have paid the whole at any time prior to the time he paid the $770; he might have paid it all then and brought suit against Charles for contribution. Take David Martin's statement as entirely true, and we believe it is, though contradicted by Eshbach as to releasing.] [5] What is it? He tells you that he and Eshbach met on the Wabank road in March, 1886, and Eshbach asked him about the note; and he promised, if he possibly could, to pay his share of the note that spring, and Eshbach said if he did he would release him (this Eshbach denies), and he afterwards sent his son to pay the money on April 1, 1886; paid $770. Does it release him? Taking everything he states to be true, does it release him in law?

A surety will not be discharged by a delay of the creditor to sue the principal. He will not be discharged by part payment from the principal. Mere delay and passiveness of the creditor does not discharge a drawer or indorser, even when the delay and subsequent insolvency of the principal deprives him of all means of reimbursement; he must still submit to it; he has no means of relief. In this case Martin might have done one of two things to save himself. He might have compromised as permitted by §§ 1, 2, 3, 4, 5, act of March 22, 1862, P. L. 167; or, he might have paid the whole note, and then himself brought suit against Charles for contribution. He might have saved himself in that way. He did not do so; he simply paid, as he says, his share on the promise of Eshbach to release him.

The courts say the law is that, a part payment of a bill or note which has fallen due, only extinguishes it pro tanto, and an agreement that it shall be in full discharge of the debt, does not make such part payment any more effectual as to the residue. . . . .

[And this being our view of the law, we therefore instruct you to render your verdict for the plaintiff, for the amount of his claim, the balance of the note with the interest due thereon, the whole amount being $861.70.] [6]

The plaintiff requests the court to charge:

1. The alleged promise or agreement testified to by David Martin, and some of defendants' witnesses, as having been made by John B. Eshbach, to the effect that he, David Martin, was to be relieved or discharged from all further liability on the payment of the half of the note in suit, being based on no valuable consideration, is not binding either on John B. Eshbach, or Jacob M. Frantz, the plaintiff in this case. Therefore said part payment is no defence to this suit which is brought to recover the balance, and the verdict of the jury must be for plaintiff and against David Martin and John U. Charles.

Answer: Affirmed.[1]

The defendant, Martin, requests the court to charge:

1. That the liability of David Martin on the note in controversy would have been barred by the statute of limitation and himself relieved if he had not made the payment, to wit: $770, on April 1, 1886.

Answer: Refused.[2]

2. That if the jury believe, from all the evidence, that at the time said payment was made, to wit: $770, on April 1, 1886, the distinct understanding and agreement was that he was to be discharged and relieved from all other liability on said note, then he is relieved and the plaintiff cannot recover against him.

Answer: Refused. Six years bars recovery. If payment had not been made within six years, the statute would have been a bar, but payment was made within six years and the statute did not become a bar, but continued the note for six years more, unless he was relieved by payment or otherwise.[3]

The jury rendered a verdict for the plaintiff against John U. Charles and David Martin for $861.70. Judgment having been entered David Martin took this writ, assigning for error:

1. The answer to plaintiff's point.[1]

2, 3. The answers to defendant's points.[2] [3]

4–6. The parts of the charge included in [ ] [4 to 6]

*Mr. Philip D. Baker*, for the plaintiff in error:

1. "The rule that the payment of a less sum of money, though agreed by the plaintiff to be received in full satisfaction of a debt exceeding that amount, shall not be so considered in contemplation of law, is technical and not very well sup-

ported by reason. Courts, therefore, have departed from it upon slight distinctions: " Cumber v. Wane, 1 Sm. L. C. 561. This doctrine has been held good in Pennsylvania: Mechanics Bank v. Huston, 11 W. N. 389; Brockley v. Brockley, 122 Pa. 1.

2. In this case we claim the distinction and consideration that prejudice to the defendant David Martin was present. The payment made by him was obtained from him by a promise that he should be released and his co-surety alone pursued. The co-surety was not pursued, but has become discharged by the statute of limitations, and Martin's right to contribution is thus gone. Any detriment to the promisee is a good consideration: 1 Whart. on Cont., 505; Walstrom v. Hopkins, 103 Pa. 118. The contract we rely on, was therefore not nudum pactum, but a good accord and satisfaction.

*Mr. W. R. Wilson* (with him *Mr. And. M. Frantz*), for the defendant in error:

1. It is well settled that part payment of an undisputed overdue debt is not a good accord and satisfaction, and an agreement that it shall satisfy the whole and release the debtor is nudum pactum: Byles on Bills, Sharswood, *180, n. 1; Wheeler v. Wheeler, 11 Vt. 60; Brockley v. Brockley, 122 Pa. 1; Walstrom v. Hopkins, 103 Pa. 118; Rumberger v. Golden, 99 Pa. 34; Rice v. Morris, 4 Wh. 249; 2 Daniel on Neg. Inst., §§ 1289, 1327; Cumber v. Wane, 1 Sm. L. C. *439–470; Hartman v. Danner, 74 Pa. 40. But the whole testimony for the defendant, taking every word of it as true, fails to make out a contract to release Martin.

2. Whether Martin has a right to contribution or not, does not affect our right to recover against him. His whole position is based on a fallacy. The fact that, as between the plaintiff and B. U. Charles, the latter successfully interposed the statute of limitations as a defence against the suit upon the note, will not prevent Martin, after paying it off, from recovering against Charles in a suit for contribution. The right to contribution, and the right of action therefor, do not arise as between co-sureties until one of them has paid more than his share of the debt, and consequently the statute of limitations does not begin to run between them until then: 1 Pars. on

Cont., 5th ed., 35, 36; Peaslee v. Breed, 10 N. H. 489 (34 Am. Dec. 178); Boardman v. Paige, 11 N. H. 431; Howe v. Ward, 4 Me. 195.

OPINION, MR. JUSTICE MITCHELL:

It is too well settled to admit of discussion that an agreement to accept a smaller sum in satisfaction of a larger one, presently due, is without consideration and cannot be enforced; Brockley v. Brockley, 122 Pa. 1; and the actual acceptance of such smaller sum is not a good discharge of the debt, even as accord and satisfaction: Mechanics Bank v. Huston, 11 W. N. 389.

It is clear, therefore, that the agreement relied on by the defendant below was without consideration in the way of benefit accruing to the plaintiff, and it must fail as a defence unless it imposed some burden or disadvantage on the defendant. All that is claimed for it in this regard is, that it allowed the statute of limitations to run in favor of the co-surety, B. U. Charles, and thus deprived defendant of his right to contribution. The authorities, however, are quite uniform that this result does not follow.

" The right of action for contribution does not arise until payment of more than a due proportion, and hence the statute of limitations does not begin to run until then:" De Colyar on Guaranties, 354, Morgan's Am. ed.; and see Parsons on Contracts, pp. 33–37, and cases there cited.

The precise point involved here has been expressly decided by several courts of the highest authority. Thus in Peaslee v. Breed, 10 N. H. 489, one of two joint makers of a note was protected against the holder, by the statute of limitations, while the other, through payments made by himself, remained liable. The latter having paid, was held entitled to recover of the former his share for contribution, PARKER, C. J., saying, " We are of opinion that the plaintiff is entitled to recover for the amount paid after the period when no action could have been sustained directly against the defendant by the payee of the note."

In Boardman v. Paige, 11 N. H. 438, the rule is thus stated: " When one promisor still continues liable . . . . . and is compelled to pay . . . . . the liability of the co-promisors for con-

tribution will still remain, notwithstanding . . . . . they may be discharged by the operation of the statute of limitations, from their liability to the promisee."

In Wood v. Leland, 1 Metc. (Mass.) 387, it was said by Chief Justice SHAW, "Defendants contend that as they could not be held responsible to the obligee after the year, so they would not be liable for contribution to a surety after that time. But the court are of opinion that the statute of limitations cannot be so applied. It may well be admitted that the statute of limitations would be a good bar to an action by the obligee; . . . . . but the right of action by the surety for contribution does not accrue at the breach of the bond, but upon his payment of the money pursuant to that breach."

And in Camp v. Bostwick, 20 Ohio St. 347, it was held that the right to contribution does not arise directly from the original instrument of joint obligation, but from the equity of one who has borne more than his just share of a joint burden, and "this equity having once arisen between co-sureties," says MCILVAINE, J., "neither the creditor, the principal, the statute of limitations, nor the death of a party can take it away."

It is thus clear on the authorities that whatever rights of contribution plaintiff in error may have, arise out of his payment of more than his due proportion of the joint obligation, and will date from such payment, entirely unaffected by the fact that the statute of limitations has barred any direct liability of his co-surety to the creditor.

The agreement relied on being therefore without consideration, either by way of advantage to the plaintiff or disadvantage to the defendant, was not a valid defence, and the learned judge was right in directing a verdict for plaintiff.

Judgment affirmed.