109   45
123   132
123   137
109   45
139   1 50

## GOW v. COLLIN & PARKER LUMBER CO.

1. Corporations—Corporate Existence—Estoppel.
    Where an association purports to be a corporation, and is recognized as such by the public authorities, its corporate existence cannot be attacked, and its members held liable as partners, by a creditor who has dealt with it as a corporation.

2. Same.
    The owner of a mortgage purporting to be given by a corporation, by seeking to foreclose it, affirms the corporate existence of the mortgagor.

3. Mortgage Foreclosure—Prior Incumbrance—Estoppel.
    The holder of a mortgage which recognizes prior incumbrances is estopped, in foreclosing the mortgage, from denying the validity of such prior liens.

Appeal from Muskegon; Russell, J.   Submitted January 17, 1896.   Decided March 31, 1896.

Bill by James Gow and another to establish the individual liability of the stockholders in the Collin & Parker Lumber Company for the payment of its debts, to foreclose certain mortgages, and for other relief.   From a decree dismissing the bill on demurrer of the defendant John A. Elwell, complainants appeal.   Affirmed.

*Bunker & Carpenter*, for complainants.

*John Vanderwerp* (*Frank H. Smith*, of counsel), for defendant Elwell.

Moore, J.   The complainants, James Gow and John Campbell, are copartners composing the firm of Gow & Campbell, engaged in a general lumber business at North Muskegon, where they own a mill.   July 30, 1890, the defendants William W. Collin, Charles H. Parker, and John A. Elwell incorporated under the name of the

Collin & Parker Lumber Company, for the purpose of "the purchase, manufacture, and sale of lumber, shingles, and other forest products, and carrying on a general lumbering business, and, incident thereto, to purchase and sell timber lands and timber," and to that end executed and filed articles of association for the incorporation of said company. The capital stock of the company was $20,000, divided into 2,000 shares, of which Collin held 1,998, and Parker and Elwell held one share each. The articles of association filed with the clerk of Muskegon county state that the entire sum of the capital stock was paid in. August 30, 1890, the Collin & Parker Lumber Company increased its capital stock to $30,000. January 24, 1891, the company filed its annual report in the office of the clerk of Muskegon county, in which it was stated that the capital stock was divided as follows: "William W. Collin, 2,059 shares; Charles H. Parker, 60 shares; John A. Elwell, 1 share." The report also stated that—

"The amount of capital stock is $30,000; the amount of capital actually paid in is $21,200; the amount invested in real estate is none; the amount of personal estate is $47,715.87; the amount of the debts of the corporation is $45,927.65; the amount of the credits of the corporation is $21,230.56."

January 30, 1892, the company filed its second annual report, in which it was stated the division of the capital stock had not changed from that of the previous year, and that its liabilities and assets were as follows:

"The amount of capital stock is $30,000; the amount of capital actually paid in is $21,200; the amount invested in real estate is $3,000; the amount of personal estate is $54,586.84; the amount of the debts of the corporation is $53,630.32; the amount of the credits of the corporation is $26,509.30."

The complainants allege that, relying on the statements in the articles of association and in the annual reports, and believing that the company had a capital

stock of $20,000, subscribed in good faith and paid in, and that the company was doing a legitimate and profitable business, and that the stock in trade and assets of the company were increasing, and never having any information to the contrary prior to December 20, 1892, they, in the year 1891 and the early part of 1892, sold to said company large quantities of lumber, for which the company paid in full; that complainant Gow, on or about May. 10, 1891, and prior to the time when complainants made any sale of lumber to the company, made inquiries of Colon C. Billinghurst, cashier of the defendant the Lumberman's National Bank, as to the financial responsibility of said company, in order to ascertain whether it would be safe for complainants to sell to the company on credit, and were assured by Billinghurst that the company was all right, and that it would be safe for complainants to sell to the company on credit; that August 1, 1892, Collin, in behalf of the company, applied to complainants to purchase a million feet of lumber; that complainant Gow, knowing that defendants Hovey & McCracken had had and were having deals with said company, applied to McCracken for information as to the financial strength and credit of the company, and was assured by McCracken that the company was all right, that its financial responsibility and credit were good, and that Hovey & McCracken had sold to said company $20,000 worth of lumber at a time, but that McCracken did not disclose to complainant that they had any security or guaranty for the payment of the same, and complainants were ignorant of that fact until December 20, 1892; that complainants, relying upon the financial strength and credit of said company as disclosed by its articles of association and annual reports, as well as upon the representations of McCracken, sold to the company, August 18, 1892, a million feet of lumber for $7,276.87, and delivered the same to the company from time to time, and took in payment therefor the notes of the company, described as follows: September 10, 1892, $3,000; September 26,

1892, $2,500; October 11, 1892, $1,776.87,—all payable to the order of complainants, 90 days after date, respectively.

December 20, 1892, the Collin & Parker Lumber Company executed and delivered to the Lumberman's National Bank a chattel mortgage for $6,000, covering all the personal property of the company, its accounts, bills receivable, and books of account, which mortgage was recorded the same day as a first mortgage. , On the same day, defendant also executed and delivered a second mortgage on the above-described personal property, books of account, etc., to Hovey & McCracken, for $14,-425.39. Four other mortgages on the same property, except the accounts, bills receivable, books of account, etc., were also executed by the defendant in the following order, for the amounts specified: To complainants, Gow & Campbell, for $7,276.87; to Gray Bros. Manufacturing Co., for $1,302.26; to C. S. Bacon & Co., for $3,198.47; to James E. Austin & Co., for $531. All of the mortgages were executed subject to the lien of the mortgage or mortgages that preceded them. December 28, 1892, Bacon & Co. and Austin & Co. assigned their mortgages to the complainants.

The bill of complaint alleges that Collin and Parker, at the time of the incorporation of the Collin & Parker Lumber Company, were pecuniarily irresponsible, and that Elwell was and is a man of large means and excellent credit; that he is the father-in-law of Collin; that their incorporation was simply to procure a means of credit for Collin and Parker by lending the name and business standing of Elwell; that the statement made by them that the entire capital stock was paid in was false; that the company has never had any capital stock or stock in trade other than the lumber acquired after their incorporation from other firms and corporations, except some lumber purchased by Collin from Hovey & McCracken, for the payment of which Elwell had become personally responsible; that this lumber was turned over

to the company by Collin; that the agreement between Elwell and Hovey & McCracken has been twice renewed and is still in force; that no payment has been made to Hovey & McCracken for lumber so purchased or thereafter purchased from them by said company or said Collin or said Elwell, except from the proceeds of the sale of the stock acquired by said company; that the annual reports were false and misleading, and were filed for the purpose of enabling the company to extend its credit; that all the statements made by the company relative to its business standing were intentionally and designedly for the purpose of misleading, deceiving, and taking a fraudulent advantage of those who should sell it lumber; that. the defendants the Lumberman's National Bank and Hovey & McCracken were cognizant of the true condition and status of the company; that, by reason of the premises, the Collin & Parker Lumber Company never existed as a corporation, and is not now, and never was, a corporation, but now is, and since the date of its pretended incorporation has been, a copartnership; and that Collin, Parker, and Elwell are now, and since July 30, 1890, have been, copartners, and are jointly and severally liable as such.

The bill also alleges that on December 20, 1892, the bank and Hovey & McCracken took possession of the company's property by virtue of their mortgages, and proceeded to collect all outstanding accounts; that complainants were refused access to the books of the company, and claim there is yet sufficient assets to discharge the indebtedness due to them; that there is now due them on the mortgage executed to them by the company $5,500, with interest on $3,000 at the rate of 8 per cent. from December 12, 1892; that there is now due complainants on the mortgage given by the Collin & Parker Lumber Company to Bacon & Co. $1,900, with interest as follows: On $1,500 from December 19, 1892, and on $400 from December 25, 1892; that there is due complain-

ants on the mortgage given by the company to Austin & Co. $531; that the remaining sums secured by said mortgages will become due as therein respectively stated; that no payments have been made on any of said mortgages, nor has any proceeding at law been had for the recovery of the debts, or any part thereof, secured thereby.

The complainants ask that the pretended incorporation of the Collin & Parker Lumber Company be declared to be void, and that the stockholders be decreed to be partners, and liable for the debt of the complainants, and that the court determine how much is due complainants; that the Collin & Parker Lumber Company, William W. Collin, Charles H. Parker, and John A. Elwell may be decreed to pay that amount, with costs; that the Lumberman's National Bank and Hovey & McCracken be required to disclose the true status of their business relationship with the company, and to disclose if the company has given them other security than the first and second mortgages mentioned before; for a writ of injunction restraining the bank and Hovey & McCracken from disposing of any of the property of the company, and that they apply what they have received from the assets of the lumber company on their mortgages; for the appointment of a receiver for the Collin & Parker Lumber Company, and the application on complainants' mortgages of the assets of the company; for a personal decree for any deficiency against Collin, Parker, and Elwell, and a prayer for general relief.

Defendant Elwell demurred to the bill, and the demurrer was sustained. Complainants failed to file an amended bill, and the court ordered the dismissal of the bill of complaint. The case is brought here for review.

The complainants seek to have the corporation known as the Collin & Parker Lumber Company declared invalid and void, and its stockholders held to be partners, and liable for the indebtedness due the complainants. Are the complainants in a position to make that claim and to

seek that relief?    The company, in form, was duly incorporated, was recognized by the public authorities, and filed its annual reports, and did business as a corporation. The complainants dealt with it as a corporation, and accepted its mortgages, made as a corporation.    In the case of *American Mirror & Glass-Beveling Co.* v. *Bulkley,* 107 Mich. 447, it was held that, where an association was recognized by the public authorities as a duly-organized corporation, and did business and filed its annual reports as such, a creditor who dealt with it as a corporation could not attack its corporate existence, and hold its stockholders liable as partners.    See *Swartwout* v. *Railroad Co.,* 24 Mich. 389; *Merchants & Manufacturers' Bank* v. *Stone,* 38 Mich. 779, and cases there cited.    The case at issue must be governed in that respect by the above-mentioned cases.

The complainants urge that, if it be conceded that they cannot raise the question of the validity of the corporation, and that the defendant Elwell cannot be held liable on the complainants' mortgage as a copartner, the bill will still lie as against him.    They urge that the bill is primarily one for the foreclosure of a mortgage, and an accounting, an injunction, and a receiver; that, as such, it was properly filed, and that Elwell is a necessary party if the complainants obtain the relief they are entitled to.    They urge that the capital stock of the company, as between it and its creditors, should have been fully paid by its incorporators; that the creditors dealt with the corporation relying upon all its capital stock being paid in.    They argue that, as the capital stock was in fact paid by the lumber furnished by Hovey & McCracken to the amount of $20,000, which was to be paid for by Collin with his notes, guaranteed by Elwell, the creditors have a right to say that those notes shall be paid by Collin and Elwell from other funds than the assets of the company.    They further argue that, to allow the notes guaranteed by Elwell to be paid out of the assets of the corporation, would leave the corporation in the position of never having had

in fact any capital stock. They insist that upon the facts stated in the bill the complainants are entitled to call on Mr. Elwell to furnish the full amount of the guaranteed $20,000, to meet the claims of the creditors of the Collin & Parker Lumber Company, and that Elwell should be compelled to answer. They cite, in support of their position, *Doyle* v. *Mizner*, 42 Mich. 332; *Attorney General* v. *Hanchett*, 42 Mich. 436.

In addition to the reason we have already mentioned, growing out of the fact that by their dealings with it the complainants have recognized the existence of the corporation, there are two difficulties in the way of this contention. One is that the facts stated in the bill do not necessarily establish the inference that the $20,000, or any part of it, which was to be paid to Hovey & Mc-Cracken for the lumber sold Collin, previous to the organization of the corporation, has been paid out of the assets of the corporation. The mortgage—which is a part of complainants' bill—which Hovey & McCracken took from the corporation shows upon its face that it was given for some other debt than that of Collin. The notes, the payment of which is secured by the mortgage, bear date two years subsequent to the organization of the corporation, and the notes were the notes of the corporation, and were executed as such. The other difficulty is that the mortgages complainants are seeking to foreclose all mention and recognize the preceding mortgages. Can the complainants affirm the mortgages in part, as they seek to do by attempting to foreclose them, and disaffirm them in important particulars, by asking this court to set aside the lien established by the prior mortgages, which liens are recognized in the mortgages sought to be foreclosed by the complainants? It is a well-established principle of law that a party cannot affirm such parts of a contract as will inure to his benefit, and rescind that part which is disadvantageous. The rescission must be entire. The contract cannot be treated as valid for one purpose and void for another. *Galloway* v. *Holmes*, 1

Doug. (Mich.) 330; *Jewett* v. *Petit*, 4 Mich. 508; *Sloan* v. *Holcomb*, 29 Mich. 161; *Thompson* v. *Howard*, 31 Mich. 309; *Dunks* v. *Fuller*, 32 Mich. 242; *Walsh* v. *Sisson*, 49 Mich. 423; *Rowley* v. *Towsley*, 53 Mich. 329; *Farwell* v. *Myers*, 59 Mich. 179; *Merrill* v. *Wilson*, 66 Mich. 232; *Button* v. *Trader*, 75 Mich. 295. By seeking to sustain this suit as a proceeding to foreclose mortgages executed by the corporation known as the Collin & Parker Lumber Company, the complainants affirm the corporate existence of that company as a legal body, and the legality of the mortgages mentioned in the bill of complaint.

The demurrer is sustained, with costs.

The other Justices concurred.